IN THE UNITED STATES OF AMERICA
DISTRICT COURT, 333 CONSTITUTION
AVENUE N.W., WASHINGTON, D.C. 20001

Case: 1:14-cv-02222
Assigned To : Contreras, Rudolph
Assign. Date : 12/31/2014
Description: Pro Se Gen. Civil

BETWEEN:

MR SIMON CHARLES BUNCE  *Plaintiff*
31 Blueberry Gardens  *Claimant*
Andover, UK
SP10 3XD
VS.

COMPUTER SCIENCES CORPORATION                               (1)
The Americas 3170 Fairview Park Drive Falls Church, VA 22042

INTERNATIONAL BUSINESS MACHINES CORPORATION        (2)
1 New Orchard Road, Armonk, New York 10504-1722

*Defendants*

**FILED**
DEC 3 1 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

WHISTLE BLOWER WITNESS STATEMENT

MR SIMON CHARLES BUNCE OF ANDOVER, HAMPSHIRE, UNITED KINGDOM WILL MAKE OATH AND SAY,

1. ON 20 NOVEMBER 2012, AT 1100 HOURS DST (GMT+1), INSIDE A MILITARY ESTABLISHMENT IN WARMINSTER, WILTSHIRE, UNITED KINGDOM, I DID REPORT TO A MS SARAH CLEARY, MY VETTING CLEARANCE OFFICER (AN EMPLOYEE OF THE MINISTRY OF DEFENCE) THAT FOLLOWING:
   1. IN APRIL 2003, WHILE SERVING AS A COLONEL IN THE BRITISH ARMY, A JAMES HENRY O'H POLLOCK, MBE (IG), ARMY NUMBER 493490, DID SIGN INTO BEING A CONTRACT BETWEEN THE MINISTRY OF DEFENCE AND CONSORTIUM INCLUDING CSC AND MR POLLOCK DID THIS FOR DIRECT PERSONAL FINANCIAL GAIN, AND
   2. IN MAY 2012, MR POLLOCK DID SEEK TO DEFAME ME, IN THAT HE CRITISED, IN A MEETING AT UK ARMY HEADQUARTERS A PIECE OF DETAILED STAFF WORK THAT I HAD COMPLETED AT THE REQUEST OF THE DEFENCE INFRASTRUCTURE ORGANISION (DIO), AN AGENCY WITHIN THE MOD EVEN THOUGH THAT PIECE OF STAFF WORK WAS BEING DEMONSTRATED AS "BEST PRACTICE" AT THE SAID MEETING. A MAJOR NOEL HORNSBY TOOK THE NOW RETIRED COLONEL POLLOCK TO TASK, AND THEN INFORMED ME OF THE COMMENTS, AND
   3. MR POLLOCK WAS INSTRUMENTAL IN GETTING SIGNED INTO BEING A CONTRACT BETWEEN IBM UK LIMITED, A WHOLLY OWNED SUBSIDIARY OF IBM CORPORATION, AND THE MOD WHICH I DID SAY WAS ABSOULTELY NOT FIT FOR PURPOSE AND AGAIN THIS WAS FOR DIRECT PERSONAL FINANCIAL GAIN.

2. I DO SAY THAT THIS IS CORUPT. A PAYMENT OF USD 4,500,000 WAS MADE.

3. SUBSEQUENT TO MY DISCLOSURE REGARDING MR POLLOCK, HE DID ARRANGE TO HAVE ME ILLEGALLY DISMISSED FROM MY CROWN ESTABLISHED MILITARY CIVIL SERVICE POSITION WITHIN THE MOD AS ARTD-

**RECEIVED**
DEC 3 1 2014

DTRO-ARMY2-SO2 BECAUSE I WOULD NOT AGREE WITH MR POLLOCK ABOUT PARA (1.1), (1.2) AND (1.3).

4. THE TOTAL VALUE OF THE CONTRACTS ARE:
   1. £600 MILLION, AND
   2. N/A, AND
   3. £150 MILLION, SO £750 MILLION WHICH EQUALS USD 1,125,000,000 (USING A CONVERSION RATE OF GBP1 TO USD1.50.

5. THIS WAS REPORTED VOLUNTARILY BY ME AND I CLAIM WHISTLE BLOWER RELIEF.

6. I CAN PROVE AND DETAIL EVERY SINGLE ALLEGATION BEYOND ALL REASONABLE DOUBT. SEE EXHIB [SCB001] COE, EMAIL STRING & STATEMENT

THIS STATEMENT IS TRUE, TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____        5 MAY 2014
MR SIMON C. BUNCE

PRIVATE

*Bunce 15 JUL 13*

Mrs Kate Hunt
PPPA-RD&P RECT T9b
PPPA External Recruitment
Spur 11 Block J
Foxhill Bath
BA1 5AB

Telephone: 01225 882086
Fax: 01225 884278
E mail: peopleservices@pppa.mod.uk

**People, Pay and Pensions Agency**

**Private**
Mr S Bunce
31 Blueberry Gardens
Andover
Hampshire
SP10 3XD

HRMS Ref: 348437

Date: 20 November 2008

Dear Mr Bunce,

### MOD NEW ENTRANT JOINING INSTRUCTIONS

Thank you for accepting the offer of a post in the Ministry of Defence. I am writing to confirm your start date and provide you with your joining instructions.

Start Date: 24 November 2008

Reporting Time: 09.00

Reporting Address: Main Gate, HQ Land Warfare Centre, Warminster, Wiltshire.

Your Line Manager will be: Col Russ Wardle

I have attached a set of Information Leaflets to tell you more about working in the Ministry of Defence.

Please remember to bring with you your P45. You should also bring your bank account details as you will need to either input these into your Human Resources Management System (HRMS) record or inform the People Service Centre (PSC) who will enter the details for you.

If you are unable to report for work on the agreed start date it is essential that you notify us as soon as possible in order that new arrangements may be made.

I would like to take this opportunity to welcome you to the MOD.

Yours sincerely

[signature]

[SCB001]  COE 1 - 20/11/08    

| | |
|---|---|
| From: | DBS Civ HR |
| Sent: | 12 February 2013 12:52 |
| To: | @mod.uk' |
| Subject: | 20130212-Simon Bunce-P |

SC BUNCE

5/5/14

As discussed this is the information as it came in today. This is potentially a Major Disciplinary Offence in the Gross Misconduct Category of:

- Failure to follow security instructions resulting in the compromise of sensitive official data e.g. secret and above and assets such as removal media, passwords and tokens (See JSP 440)
- Serious cases of negligence or professional misconduct by either act or omission.

As a result he should be suspended on his return to work on Thursday and we will need to discuss details of how to approach this is due course. Simon will need at least 2 hours warning of interview so he can request that his TU Rep accompany him. He should be supervised during that time.

Caller is an army SO2 - major working for MoD has been in role for 4 years 3 months he is SC and on 3/1/13 he reported a foreign national contacting him, he reported this via email and was advised to report this on his return from Christmas leave on the 7/1/13.

On the 7/1/13 the caller reported the incident and spoke to a G2 cell - local security officer 24 hours later on the 8/1/13.

The G2 told him there was nothing to worry about.

the callers LM Colonel James Pollock instructed the caller to keep a log regarding any strange/suspicious incidents and this log was submitted at the end of January.

as a result of this log, the callers LM suspended the caller and said he appeared to be erratic and manic. the caller objects highly regarding the erratic/manic accusation as the LM doesn't have any medical experience.

The caller handed in his resignation yesterday 11/2/13 and believed it to be a constructive dismissal, but the LM refuses to accept the resignation. The caller now believes the LM set him up regarding the log and now not accepting his resignation, he thinks they are trying to sack him.

the caller has had no previous issues with the LM and has enjoyed working for him.

the caller was dismissed from the RAF in 1982 his RAF number is 8027603 and he was dismissed from the RAF as he refused to resign his commission, he believes they dismissed him by stating he was manic, he believes this was just an excuse to get him out the job as stated previously he did not resign his commission.

due to the 'manic' dismissal he lost his pilot license which the caller describes as the 2nd most important thing to the caller, it took him 25 years to get the license back reinstated in 2007 and prove that the RAF had lied that he was manic to get him out the job.

the caller has a class 1 part med CAA certificate which was renewed on 17/12/12.

he now thinks that this recent issue is aimed at taking his license away from him again, and he says that if his license is taken away from him he will release some VERY sensitive information regarding the army 2020 as he has been working with this information for the last 4 years. He also says that he has sent the information off to a 3rd party with instructions to publish the information if he is found dead in a ditch.

he also says beyond embarrassing the MoD and Army, if his flying license is touched he will take legal action and get every last penny out the MoD that he can.

Case 1:14-cv-02222-RC   Document 1   Filed 12/31/14   Page 5 of 11

the caller also says that he is currently sat 1 hour away from the border off the country and if he doesn't hear anything within 6 hours he will go abroad and go somewhere he deems as safe.

please contact the caller via 07974 292 986 to advise on what actions he can take regarding this.

alternatively the caller would like to be contacted via scbunce@btinternet.com

caller would like either to resign and have the accusations withdrawn, or stay in post and carry on as normal and with the accusations withdrawn.

We will further need to discuss this matter as depending on the sensitivity of the data and your local security instructions, you may be required to pass this to the Civilian Police to handle prior to Thursday.



CLAIM :  _____

## STATEMENT

I, Simon Charles Bunce of 31 Blueberry Gardens, ANDOVER SP10 3XD, will say:

1. On 24 November 2008, I became an Established Civil Servant working for the Ministry of Defence (MOD) in a "Purple Cell" called the Defence Training Requirements Organisation (DTRO).

2. I was tasked as User Requirements Manager within the Strategic Planning System (SPS) Project Team (PT) led by Mr Ken Gale.

3. I began collating User Requirements for use within the SPS.

4. It became apparent that the SPS would not work due to the methodology being proposed.

5. The SPS never worked and cost the MOD about £1.2M.

6. After the May 2010 General Election, the new Government stopped all new Information Technology and Communications (ITC) contracts. The IPT introducing SPS with PARITY PLC had front-loaded the contract.

7. The Commander (Comd) HQ Defence Training Estate (DTE) when the VANGUARD contract was let (introduced) in 2003 was Colonel James H O'H Pollock, MBE (late IG). This Contract was valued at £600M over 10 years and, I believe, has cost the MOD some £1,200M. VANGUARD is a Contract between the MOD and a private consortium called LANDMARC Support Services to deliver back to the MOD the Defence Training Estate, facilities and live fire ranges that was previously owned and operated by the MOD.

8. In about August 2008, Col Pollock moved from his role at DTE and became Team Leader (TL) for DTRO.

9. Col Pollock was replaced by a Col Mark Waring (late RA) as Comd HQ DTE.

10. In August 2009, Col Pollock retired from the Army and was interviewed for the Full Time Reserve Service (FTRS) post established as TL-DTRO. He was successful at interview. His interviewing Officer was Col M Waring (late RA).

11. Sometime later, Col M Waring retired from the Army and joined a Defence Contractor called "BABCOCK" as a Project Manager.

12. The new Government had set up the Next Generation Estate Contract (NGEC) and the National Training Estate Prime (NTEP) was based on these principles. NTEP is to replace VANGUARD.



[SCB001] (1/6)

13. I was part of the Stakeholder Engagement Working Group (SEWG) for the NGEC NTEP that stood up in 2011. It continued on from Project LEOPARD, an extension to the original VANGUARD Contract. This extension was rejected by The Treasury in, I believe, 2011.

14. The three bidders for the new NTEP Contract are:

    a. LANDMARC Support Services (the existing supplier)
    b. BABCOCK
    c. KBN

15. I received a number of inappropriate telephone calls from Col (Rtd) M Waring in his role as NTEP Project Manager at BABCOCK. He was calling to ask me questions about what was required to enable BABCOCK to win the Contract. I firmly insisted that he should not call me again.

16. I reported these inappropriate telephone calls to Col (Rtd) J Pollock, my Team Leader, and was told "Simon, don't worry about it – it is the way of the world. You 'scratch my back and I'll scratch yours'".

17. I was shocked at this statement and replied "Not in **my** world, Sir".

18. On around 30 October 2012, I made a Protected Disclosure [s43B(1)(a)] to my Vetting Clearance Officer, Ms Sarah Cleary.

19. In December 2012, Mr Ken Gale asked me for access to some very sensitive data regarding Future Force 2020 and ARMY 2020 Rebasing Training Requirements. I asked the Military Assistance, Lt Col Priest, to Master Gunner Ordinance, Maj Gen Pope, if Mr Gale was allowed access to the Limited Distribution information. I was told that he was not to have access to this information.

20. On 4 Jan 13 at 0007 hours, I sent an email to CDSDO at MOD Centre from my home email address (scbunce@btintenet.com) regarding what I consider to be an "attempt to contact an MOD employee by a Foreign National from Russia". The reply arrives at about 0730 hours. "Please report this to your Chain of Command immediately after you return to duty after Block Leave (14 Dec 12 to 7 Jan 13)". If I felt under threat I was to contact the MOD Police Central Control Room (CCR) on 01371854444.

21. On 7 Jan 13, I report a "Foreign National Contact Report" to Col Pollock. He reports to the G2 (Security) Officer (G2 (Sec)) responsible for Warminster Garrison (WarGar). Immediately, all staff in the Building I work in (Bld 95) are issued with additional Personal Security advice and all the door locks are changed. G2 (Sec) demands from me a formal copy of the email string that I initiated at 0007 hours on 4 Jan 13. I comply.



22. On 8 Jan 13, G2 (Sec) says "Oh, thanks for that email but it was nothing – it has been filed".

23. Later on 8 Jan 13, Col Pollock asked me to log any unusual activity I notice while going about my normal business. I find this request unusual but I comply.

24. On or around 25 Jan 13 I finally make a number of Protected Disclosures in the correct way to the Defence Irregularities Reporting Cell (DIRC). I "blow the whistle" carefully in the manner set out in *s43(B)(a)* regarding MOD Contracts and future Contracts with the total value of £751 Million. I also say that if I am wrong, I will be first to apologise to Mr Ken Gale, Mr Peter Lemon, Col (Rtd) Mark Waring and Col (Rtd) James Pollock.

25. On 8 Feb 13 at about 1600 hours, while I am working at my desk at ARMY HQ, Col Pollock makes an inappropriate telephone call to my wife. She immediately calls me at Army HQ. I immediately call Col Pollock back and he tells me to cancel my appointment with DSF at 1100 on Mon 11 Feb 13 at Regents Park Bks (A BLOCK) and report to him at 0900 on 11 Feb 13 at WarGar.

26. On 9 Feb 13, I receive a GRIFFIN letter in the post, dated 8 Feb 13. I decline the invitation for an Occupational Health assessment from ATOS Healthcare Limited.

27. On 11 Feb 2013 at about 1000 hours, I am suspended, unofficially, by Col Pollock and sent home. I comply. That is the last day I attended for work.

28. On 13 Feb 2013 at HQ ARMY my ARMY HQ Pass is taken from me with the message passed by Col T Russell (late RDG), who I have known personally since 24 November 2008, "Go home, sit on your hands, do not do anything with the information you have uncovered, or I will kill you (or at least your reputation)". I comply. I report this matter to the Hampshire Constabulary and PC Brown of Andover Police Station says that there is nothing the Police can do about it.

29. On 22 Feb 13 I lodge a formal Grievance and complain about Col Pollock.

30. Furthermore, at 1111 hours on 22 Feb 13, a representative called "Danielle" from ATOS Healthcare Limited of Leeds asks me for highly sensitive personal information. I declined to answer and asked her if she had that information. She confirmed that she was in possession of my highly sensitive personal data. I asked her where she got it from and she says "Mr RAY PARKER of the Transformational Team passed her my private data". I say that I do not know her, Mr Parker or what the "Transformational Team" is and she hurriedly assures me that she will "return the file", and then she hangs up the phone at 1114 hours.



31. I initiate a Complaint with the Information Commissioners Office. I later learn that MR RAY PARKER is an MOD Civil Servant working for a MR CHRIS MAPLE in the Defence Business Services (DBS) part of the MOD which is controlled by SERCO PLC.

32. On 25 Feb 13 I receive confirmation of receipt of my complaint against Col (Rtd) Pollock from a Col NS Chapman (late Mercian) S/N 508189, HQ Army Recruiting and Training Division (ARTD) Chief of Staff (COS).

33. On 5 Mar 13, I am officially suspended by Mr Michael J Cooper, HQ ARTD, for leaking highly sensitive confidential information outside The Department (MOD) without explicit consent. I deny the accusation.

34. Col NS Chapman is appointed my Investigating Officer (IO) in the subsequent investigation triggered by DBS Serco plc.

35. At 0930 hours 20 Mar 13, at HQ ARTD Building 370 in Col Chapman's personal private office, in the presence of Lt Col Arwyn Lewis RE, Col Chapman and I have an "informal" meeting. I have no notes from this meeting. I do remember Col Chapman saying, as he was laughing, "I am not making notes" as he wrote in his personal planner in pencil. I made a number of free and frank admissions which I never expected to see in the "Public Domain".

36. On 19 Apr 13 at 1930, I leave my house with my wife to celebrate our 17th Wedding Anniversary at a local hostelry. We return (by taxi) at about 2300 hours and retire to bed.

37. At about 0900 on 20 Apr 13, I notice that the Broadband Connection to our home computers in not working. I check all the cables. I pick up the phone to call the help desk and notice that there is no dial tone.

38. I discover petty vandalism has occurred against our house and our telephone line has been severed. I report this to BT Openreach on Mon 22 Apr 13. At about 1630 hours, a BT Engineer attends 31 Blueberry Gardens, SP10 3XD for about 4 minutes and repairs the petty vandalism.

39. I subsequently discover that at about 0400 ot 0436 hours on 22 April 2013 a large number of "unusual" emails have been sent by person or persons unknown from my Secondary Email Address (scbunce@gmail.com). I warn all my contacts of this breach of my Gmail address and stop all use of that email address.

40. On 30 April 13, I lodge a formal complaint against Col Chapman for inappropriate conduct and conduct unbecoming a Commissioned Army Officer. I also note that he has introduced into the Public Domain a comment I made at the unofficial meeting on 20 Mar 13. I immediately

lodge the formal complaint with MAJ R Streetfeild, the MA to MAJ GEN RR Davis CBE, The Director (D) ARTD, Col Chapman's 1st Reporting Officer. MAJ Streetfeild confirms that he will bring this matter to the attention of GEN Davis on 7 May 13.

41. On 9 May 13 at about 2130, I ask Col Pollock to ask Col Chapman to withdraw the Fraudulent MOD Form 034 that I allege Col Chapman completed in my name and submitted to DBS SERCO plc.

42. At 2130 hours on 10 May 13 I am arrested by Officers working for and on behalf of the Chief Constable of Hampshire Constabulary for allegations relating to Col Chapman. The last time I spoke with Col Chapman was 1755 hours on 30 Apr 13 and I lodged a formal complaint immediately thereafter (see 40 above). I deny any allegation of wrong-doing.

43. At 1930 hours on 11 May 13, I am released on Police Bail, and have a number of conditions I must follow including no contact with Col Pollock and no contact with Col Chapman.

44. On 13 May 13, I receive a letter from Mr MJ Cooper dated 9 May 2013. He states that he has been appointed my Grievance Deciding Officer regarding my complaint against Col NS Chapman that I lodged with MAJ GEN RR Davis CBE via his MA, MAJ R Streetfeild. He does not mention anything in that letter about me being sacked.

45. On 5 Jun 13 I arrange for a days leave for 6 Jun 13 via my colleague MAJ (Rtd) M Lucas RA who has known me personally since my date of Establishment.

46. On 7 Jun 13 I apply for Summer Leave to Mr MJ Cooper via email for 28 Aug to 11 Sep 13 inclusive.

47. At 1100 hours on 11 Jun 13 I first learn about my dismissal in an anonymous telephone conversation I had with Mr MJ Cooper when I telephone him.

48. I immediately initiate contact with the MOD Police via their CCR and allege a crime has been / is being / may be committed in the future. The reference number is 66-110613.

49. On 14 Jun 13, I contact the CCR again and report another allegation. The reference number is 15-140613.

50. It is not my job to investigate these allegations. However, it is my responsibility to report any suspicious allegation.

51. Ms Hurst, from the Private Office of The Right Honourable Mr Mark François MP, the Minister of State for Defence Personnel Welfare and Veterans lies to me. She stated "you resigned". I respond immediately



"I have not resigned, you have been lied to." She appears genuinely shocked on the telephone.

52. On 15 Jun 13, I received a Special Delivery from Defence Business Services in response to my Subject Access Request (SAR), number 3625/13, issued by me pursuant to Section 7 of the Data Protection Act 1998. According to the data supplied by the MOD to me, my Vetting Clearance Officer was content to continue my Security Clearance. I invite you to read any report for yourself at any subsequent Employment Tribunal (ET) hearing.

I hereby apply for interim relief via a Continuation of Contract Order so that my Employer is ordered to continue paying me up until the subsequent ET in that I have a very firmly held belief that I have a very strong case at any subsequent ET against the MOD for Constructive Dismissal, contrary to The 1996 Act, and linked with Public Interest Disclosure Act 1998 protection in that I made a number of Protected Disclosures (s43A) regarding what I allege to be Criminal Activity and Fraud (s43(B)(1)(a) and it is my firmly held belief that I was dismissed by the MOD from my Established Position because I made these Protected Disclosures, in the prescribed manner, to the DIRC in January / February 2013. I am ready to attend the ET now and within hours should have in place robust legal representation. I would like to be reinstated now. I would also like compensation set by the ET at whatever level the ET deems appropriate in these circumstances.

Any mistakes in law I have made in this statement are mine and mine alone for which I beg your humble forgiveness, I am not legally trained and have not yet had time to instruct a solicitor. I will be doing so very soon but understand that this ET1 Form needs to be submitted by 1100 hours 18 Jun 13, 7 days after I **learnt** for the first time that I had been dismissed.

The content of this statement is true to the best of my knowledge and belief.

Signed _____ Dated ___5/5/14___ / 0900 hours.
(18 Jun 13 crossed out)

Simon Charles BUNCE
MOD Staff No: 938067L (former)
RAF Service No: 8027603 (retired GD 13 Jun 82)

5/5/14



[SCB001] (6/6)